SOUTHWEST DAIRY PRODUCTS COMPANY V. L. C. DEFRATES ET AI

No. 7251. Decided February 22, 1939.
Rehearing overruled March 15, 1939.
(125 S. W., 2d Series, 282.)

*Eskridge & Groce, Russell Talbott,* all of San Antonio, for appellant.

A servant who has departed from the regular line of his duties to perform a mission of his own was not acting within the scope of his authority while returning from the performance of his mission to resume that of his master. Barker v.

Elder, 20 Tenn. App. 251, 97 S. W. (2d) 654; Model Laundry v. Collins, 241 Ky. 191, 43 S. W. (2d) 693; Anderson v. Nagel, 214 Mo. App. 134, 259 S. W. 858.

*Moursund, Ball, Moursund, & Bergstrom,* of San Antonio, for appellee.

Defendant's employee did not depart from his employers' business, by going by his home to get his supper. However, if the court be of the opinion that he had so departed, he had resumed the line of his duty by returning to his master's business on his way back to the wash rack. Bresnan v. Republic Supply Co., 63 S. W. (2d) 1105; Edwards v. Earnest, 206 Ala. 1, 89 So. 729; McKeage v. Morris & Company, 265 S. W. 1059.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This case is before us on certificate from the Court of Civil Appeals for the Second District at Fort Worth. In the trial court judgment was rendered in favor of appellees against appellant for damages to a taxicab resulting from a collision between the taxicab and a truck owned by appellant and being driven at the time by one of its employees, Alonzo Henderson. The judgment was based upon findings by a jury that the collision with its resultant injury to the taxicab was proximately caused by the negligence of Henderson, who at the time was acting within the scope of his employment by the appellant. The certificate in part is as follows:

"Following are facts conclusively established by evidence adduced upon the trial: The defendant maintained two places of business in San Antonio, one designated by witnesses as the main plant, located on Josephine Street, and the other located on Jones Street, where a washing rack was maintained for washing its trucks. The two places are seven blocks distant from each other and the main plant was north of the wash rack. It was the duty of Henderson to drive the trucks from the main plant to the other plant and after washing them drive them back to the main plant, ready for use. The hours of his employment lasted from five o'clock in the afternoon to one o'clock the night following. The collision occurred about midnight. Shortly before the collision, Henderson had started to drive the truck, with which the taxicab collided, from the main plant on Josephine Street to the wash rack on Jones Street in order to wash it, and then drive it back to the main plant.

Instead of going directly to the wash rack, he drove the truck to his home to get his supper. His home was situated practically due west of the wash rack and at practically four times the distance as that between defendant's two places of business. After finishing his supper, he started to the wash rack for the purpose of washing the truck and then driving it back to the main plant where he got it. On that trip to the wash rack the collision occurred at the intersection of Camden and Brooklyn streets, which was about six blocks distant from the defendant's wash rack on Jones street and in a southwesterly direction therefrom, and not on the route between the two plants. The use of defendant's trucks by its employees on missions of their own had been strictly forbidden, all of which was well known to Henderson, who testified that he drove the truck to his home to get his supper, well knowing that such use was forbidden by his employer. See map in statement of facts showing location of the different places referred to.

"By its first assignment of error appellant insists that the evidence showed conclusively that at the time of the collision Henderson, its employee, was not acting within the scope of his employment and for that reason the court erred in refusing its motion for an instructed verdict in its favor after introduction of all evidence was concluded and before the case was submitted to the jury on special issues."

The question certified is as follows: "Should the assignment of error referred to above be sustained?"

The certificate is accompanied by a tentative opinion by Chief Justice Dunklin in which the view is expressed that the assignment should be sustained. In this view we concur. Cases involving facts more or less like the facts of this case are legion. We have considered a great many of them from this and other jurisdictions, but do not find it necessary or desirable to discuss them or even cite many of them for they are readily available to the bench and bar, and to harmonize them would be a difficult, if not impossible undertaking. Extensive annotations of the question certified and allied questions may be found in 22 A. L. R. 1397, 45 A. L. R. 477, 68 A. L. R. 1051 and 80 A. L. R. 725.

■ The facts recited in the certificate show a complete departure by Henderson from the course of his employment, that is from the service of his master. The relationship between an owner of an automobile and one employed by him to drive it is the same as that between master and servant generally, and the liability of the owner for the negligence of the driver is

to be determined by an application of the general rules of law governing the liability of a master for the negligence of his servant. It is the firmly settled rule that when a servant completely departs from his work to accomplish some purpose of his own not connected with his employment, the relation of master and servant is thereby temporarily suspended and the master is not liable for his acts during the period of such suspension. International & G. N. R. R. Co. v. Cooper, 88 Texas, 607, 32 S. W. 517; Branch v. International & G. N. R. R. Co., 92 Texas 288, 47 S. W. 974, 71 Am. St. Rep. 844; Galveston, H. & S. A. Ry. Co. v. Currie, 100 Texas 136, 96 S. W. 1073, 10 L. R. A. N. S. 367; Hill v. Staats, 187 S. W. 1039, on rehearing 189 S. W. 85 (error ref.); Bresnan v. Republic Supply Co., 63 S. W. (2d) 1105 (error ref.).

Many of the cases which are relied upon as departures from, or exceptions to the above rule may be grouped into two classes, first, those in which the departure was not wholly disconnected from the employment, but in which there was a mingling of the personal purpose of the servant with the doing of the master's work, and, second, those in which the departure was but a deviation and not a complete turning aside. This case does not fall within either of these two classes, but is one of a complete departure for a purpose not connected with the employer's business and not with the employer's consent. That being the nature of the case, then, by practically all of the authorities, and certainly by the well established rule in this State, as reflected by the cases above cited, had this accident occurred while Henderson was on his way home to get his supper appellant would not have been liable for the injuries sustained.

■ Is a master's liability to be governed by a different rule when, as in this case, the accident occurs on the return trip? There is respectable authority for the proposition that, when a servant has completed the purpose for which he departed from his master's business and is returning to resume the duties of his employment, he is, while so returning, engaged in his master's business and the master is, therefore, liable for injuries caused by his negligence on the return trip. Much has been written in support of this theory and, perhaps, an equal volume against it. We shall add but little to what has been written upon the subject. We find ourselves unable to adopt the reasoning of the courts which apply this theory. Of course, the purpose in the mind of Henderson while on the return trip was to take up the duties of his employment, but the master's liability does not rest alone upon the purpose in the mind of the servant. The test of liability is whether he was engaged in his

master's business and not whether he purposed to resume it. It is equally true that Henderson owed the duty to his master of returning the car and resuming his employment and, while returning to the zone of his employment, he was discharging that duty, but that fact does not fix liability against the master. It was Henderson's own wrong in driving away that created the duty to return, and in returning he was but undoing that wrong. The return was referable to, and an incident of the departure. He was no more engaged in his master's business while returning to, than while departing from his path of duty. Fletcher v. Meredith, 148 Md. 580, 129 Atl. 795, 45 A. L. R. 474; Model Laundry v. Collins, 241 Ky. 191, 43 S. W. (2d) 693; Cannon v. Goodyear Tire and Rubber Co., 60 Utah 346, 208 Pac. 519; Brinkman v. Zuckerman, 192 Mich. 624, 159 N. W. 316; Anderson v. Nagel, 214 Mo. App. 134, 259 S. W. 858; Colwell v. Aetna Bottle and Stopper Co., 33 R. I. 531, 82 Atl. 388.

The question certified is answered in the affirmative.

Opinion adopted by the Supreme Court February 22, 1939.

Rehearing overruled March 15, 1939.