J. C. PENNEY COMPANY, INCORPORATED, V.
FRANK C. OBERPRILLER.

No. 8028. Decided April 14, 1943.
Rehearing overruled May 12, 1943.
(170 S. W., 2d Series, 607.)

*Wood, Gresham, McCorquodale & Martin,* and *M. C. McCorquodale,* all of Houston, for petitioner.

It was error for both the trial court and the Court of Civil Appeals to hold that Crain was acting in the scope of his employment and in the furtherance of the business of J. C. Penney Company at the time of the accident in question. Kennedy v.

American Natl. Ins. Co., 107 S. W. (2d) 364; Galveston, H. & S. A. Ry Co. v. Currie, 100 Texas 136, 96 S. W. 1073; American Natl. Ins. Co. v. Denke, 95 S. W. (2d) 370.

*Collins, Williams & Garrison,* of Lufkin, for respondents.

There was sufficient evidence presenting the issues of fact that the said Crain was at the time of the accident acting in the course of his employment, and where the trial is to the court without a jury and there are inconsistencies in the testimony the trial court may accept portions of said testimony and reject other portions. Walker County Lbr. Co. v. Sweet, 40 S. W. (2d) 225; Wininger v. Ft. Worth & D. C. Ry. Co., 105 Texas 56, 143 S. W. 1150; Young v. Blain, 245 S. W. 65.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

Grady Crain was an employee of J. C. Penney Company, Inc., of Lufkin, Texas. G. A. Wharton, the company's manager at that point, had the same control over Crain as its employee as if he (Wharton) had owned the store. Crain's working hours except on Saturday were from 8:00 to 6:00 p. m. He was employed as a clerk in the shoe department but his duties covered matters ranging from janitor's work to assisting in buying shoes for the store. He lived several miles from the store and used his own automobile in going to and from his place of business, usually parking it on an alley adjoining the store. He had no authority to use his car in his employer's business.

In December 1940 Crain, while driving his car during working hours, was involved in an accident in which Frank C. Oberpriller was injured. Oberpriller sued both Crain and the Penney Company for damages, alleging negligence on the part of Crain, and also that Crain at the time of the accident was acting in the course of his employment. Upon trial without a jury judgment was rendered against both defendants, which was affirmed by the Beaumont Court of Civil Appeals. 163 S. W. (2d) 1067. Justice Combs dissented, construing the evidence as showing that Crain at the time of the accident was driving his car "on a purely personal mission of his own, not connected in any way with the business of his employer." Crain did not appeal. The application of Penney Company for writ of error was granted upon the view that there was no evidence that Crain was acting in the scope of his employment and in furtherance of his employer's business at the time of the accident, and that the trial court erred in entering judgment against the company.

The trial judge did not file findings of fact and conclusions of law but the record contains a full statement of the facts. The following are without dispute: On the day of the accident Crain before reaching the store left his car at a garage for repairs. Sometime during the day he asked Wharton for permission to go for his car before the garage closed, which was granted. Later in the day Wharton told Crain to take a package to the bus station. At a still later time he inquired of Crain whether he had delivered the package. Upon being told he had not Wharton told him to take it when he went for his car, that "he wanted to get it off on the bus." As Crain left the store to get his car Wharton handed him the package for delivery to the bus station. Crain delivered the package as directed and proceeded from the bus station to the garage where he procured his car. While returning to the store from the garage the accident occurred.

The majority opinion of the Court of Civil Appeals correctly summarizes Crain's movements after he left the store with the package until his return, as follows:

"Crain delivered the package to the bus station. On his return from the bus station he went by the garage, which was just a short distance off the direct route back to the store, and got his car, intending to park it at the rear of the store. But when he got to his parking place, all parking places had been taken. He did not stop, but continued driving his car along the alley and along the side of the store until he reached the street in front of the store; then he turned left, going south, and continued along the street looking for a parking place. He was about a block from the store, going away from it, looking for a parking place, when the accident occurred. After the accident he drove back to the store and parked in front of it."

It was the view of the majority that the "issue" was whether at the time of the accident Crain was engaged in his employment, and that such issue was "independent of whether he was in the general scope of his employment." Chief Justice Walker speaking on behalf of the majority, says:

"It must be said that the driving of the car—the act of driving his personally owned car—was not in the general scope of his employment, since under the rules of his employment, he was instructed not to drive his car in the discharge of the duties of his employment."

In other words the majority of the court was of opinion that Crain at the time of the accident was "engaged upon his em-

ployment," *notwithstanding the driving of his car was not within the general scope of his employment.*

We cannot agree with the conclusion reached. On the other hand we share the view expressed in the minority opinion to the effect that the evidence is not subject to the construction that Crain was engaged in any matter either in furtherance of his employer's business or within the scope of his employment when the accident occurred. The company's task assigned to him by Wharton had already been performed when he proceeded from the bus station to the garage on his personal mission.

. The Court of Civil Appeals based its conclusion that Crain "was engaged upon his employment" at the time of the accident upon the following facts: The accident occurred within the hours of Crain's employment; at such time his work for the day had not been completed; he was paid by the employer for the time he was absent from the store. In other words he was not docked while absent from the store on the temporary leave given him. .

The foregoing are the *facts* upon which the majority conclusion was predicated. In connection with the facts the further statement is made by the majority, that Crain left the store "under implied instructions to return to the store and finish his day's work"; that he did so "and the accident occurred on his return trip to the store."

We find no warrant in the facts for the conclusion that Crain in returning from his trip to get his car did so pursuant to Wharton's instructions either express or implied. The undisputed facts forbid such construction. Crain was then returning to the store pursuant to his own convenience during the temporary leave from his duties which Wharton gave him to go for his car. The testimony concerning the permission given is not conflicting. The request made by Crain was for his own personal convenience. He wanted to have his car where he customarily parked it so he would have it to go home from the store in when he had finished his day's work. He recognized the necessity of asking permission to go to the garage for it, as he would have to be "off duty" while gone. The permission requested and given was for Crain *to absent himself from his work to get his own car for his own convenience, and was not authority, express or implied, to do anything for his employer.* It appears from the evidence and the stipulations of the parties

that there were fifteen or twenty cars repair shops in the city in various directions from the store; and, as stated in the majority opinion, "Wharton did not know the location nor the name of the garage," when he granted the permission requested. Nor is there any evidence that Wharton acquired such knowledge before Crain left the store. There is no evidence that Crain's purpose to return to the store after getting his car was in any wise affected by the subsequent request of Wharton for him to deliver the package. The fact that Wharton knew when he granted the permission that Crain would return to the store after he had procured his car, in no wise changes the picture. That fact was inherent in Crain's request.

Respondent in support of his contention that Crain was acting under the implied instructions of his employer when the accident happened, stresses the fact that Wharton in the last conversation he had with Crain about the package before he left the store, told him to take it to the station when he went for his car, as he wanted to get it off on the bus. That is no evidence that he expected Crain to use his car in delivering the package. The record is conclusive that Crain did not so use it. Wharton gave him no authority to so use it and was aware that Crain knew he had no authority to use it in the company's business when he told him to take the package. No reason is apparent from any of the facts why Crain should disregard his lack of authority to deliver the package in his car. It is certain he did not disregard it. There is no basis in the evidence whereby the leave granted Crain to take time out to do a personal chore can be converted into an implied authority on Wharton's part for Crain to use his car in taking the package to the station. So far as the evidence is concerned Crain would have returned from the garage to the store just as he did, regardless of whether he had been asked to perform the intervening chore.

1 The determinative facts in the present case are that Crain had no authority to use his car in the company business, and that, consistent with this fact, he performed the task assigned him before going to the garage to get his car, and was merely returning to the store from the garage for the purpose of resuming his duties under his employment when the accident occurred. He had not at that time resumed such duties, and under the law was not at such time acting within the scope of his employment. Hill v. Staats (wr. ref.), 187 S. W. 1039, 189 S. W. 85; Southwest Dairy Products Co. v. De Frates (Com. App.), 132 Texas 566, 125 S. W. (2d) 282, 122 A. L. R. 854;

Magnolia Petroleum Co. v. Guffey, 129 Texas 293, 102 S. W. (2d) 408.

■ In determining whether an act is done in the course of the agency and by virtue of the agent's authority given him by his principal, it should be determined whether the authority given was "with a view to the principal's business." 3 C. J. S., sec. 255, p. 187. The authority just cited in elaborating upon the principle laid down, says: "The tort of an agent is within the course of his employment where the agent in performing it is endeavoring to promote his principal's business within the scope of the actual or apparent authority conferred upon him for that purpose; * * *." Chief Justice Gaines in International & G. N. Ry. Co. v. Anderson, 82 Texas 516, 17 S. W. 1039, 27 Am. State Rep., 902, says:

"To hold the master liable for the act of his servant, it is not necessary that the servant should have authority to do the particular act. The act of the servant may be contrary to his express orders, and yet the master may be liable. *But the act must be done within the scope of the general authority of the servant. It must be done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed.*" (Italics ours).

In the Staats case, supra, the collision occurred several blocks from the circus grounds before the chauffeur who was returning there to resume his employer's duties, reached the grounds. In the opinion of the Court of Civil Appeals on rehearing in that case it was pointed out that plaintiff contended the court should hold that the chauffeur was, while returning to the grounds, "at least resuming the services of his master, and that, therefore, the chauffeur was, at the time of the injury to plaintiff, acting within the scope of his employment." In overruling plaintiff's contention that the chauffeur was acting within the scope of his employment while returning to resume his duties, the court said:

"While, as before suggested, other cases might be cited sustaining appellant's contention, yet, in the face of the conflict of authorities, we conclude that the more reasonable and just rule has been followed by the courts whose decisions we have cited. Hence appellant's motion for rehearing is overruled."

The Staats case has been cited many times with approval and the decision has not been departed from, so far as we have been able to ascertain, the last citation by this Court being

upon certified question in Southwest Dairy Products Co. v. De Frates, supra.

The majority opinion of the Court of Civil Appeals in the present case appeals to give special significance to the quoted statement from Blashfield's Cyclopedia of Automobile Law (Vol. 5, p. 190, sec. 3035) to the effect that the employee's deviation from the most direct route does not constitute an abandonment of the master's business, especially "where the servant has been given a discretion in choosing the route." No question of abandonment of the employer's business is involved under the facts of this case. The task assigned the employee to deliver the package at the bus station had been finished before Crain started on his return trip to the store from the garage. The employer's business, under the leave of absence given Crain, was not to begin until after his return to the store to sweep it out. Staats and Southwest Dairy Products case, supra. Nor is any question of deviation from a direct route back to the store involved, since no one but Crain had aught to do with the route of his return from the garage. The time he was away from the store after he left the garage until his return, was his own. The Blashfield quotation is not applicable to the present facts.

The judgment of the Court of Civil Appeals affirming that of the trial court is reversed, and judgment is here rendered in favor of plaintiff in error.

Opinion adopted by the Supreme Court April 14, 1943.

Rehearing overruled May 12, 1943.