CHISOS MINING COMPANY V. PEDRO HUERTA ET AL.

No. 8078. Decided June 9, 1943.
(171 S. W., 2d Series, 867.)

*Swearingen & Bledsoe* and *S. M. Swearingen,* all of Marfa, for petitioner.

It was error for the Court of Civil Appeals to hold that the employee was in the scope of his employment at the time of the accident. Galveston, H. & S. A. Ry. Co. v. Currie, 100 Texas 136, 96 S. W. 1073; Sweeden v. Atkinson Imp. Co., 125 S. W. 439;' 39 C. J. 1295.

*Gordon Griffin,* of Alpine, and *E. B. O'Quinn,* of Marfa, for respondents.

On the theory that "every person who is found performing the work of another is presumed to be in the employment of the person whose work is being done," Andreau was acting in the scope of his authority at the time of the accident. Mills v. Mills, 228 S. W. 919; Taylor B. & H. Ry. Co. v. Warner, 88 Texas 642, 32 S. W. 868.

MR. JUDGE SMEDLEY of the Commission of Appeals delivered the opinion for the Court.

The suit is by respondents Pedro Huerta et al against petitioner Chisos Mining Company to recover damages for injuries suffered by Pedro Huerta, Jr., a minor, who, it is alleged, was struck by an automobile driven by J. E. Andreau, an employee of petitioner. The trial court's judgment in favor of petitioner, following an instructed verdict on the conclusion of respondents' evidence, was reversed by the Court of Civil Appeals and the cause remanded for trial. The opinion of the Court of Civil Appeals has not been published.

The case was submitted to the Court of Civil Appeals on an agreed statement of facts; and the sole question here presented, as in that court, is whether J. E. Andreau, the driver

of the automobile, was, at the time when the minor was struck, acting within the scope of his employment and in furtherance of the mining company's business. .

Andreau had been employed by the mining company for several years as chief mechanic, his duties being to superintend the work of other mechanics and to see that the company's machinery was kept in good working condition. All of his time during working hours belonged to the mining company, and he had to report to no one except the president of the company. In discharging his duties, Andreau exercised his own judgment about the work to be done and when and where it should be done. He was not directed by the president of the company or by anyone else when or where to work. Andreau was not required to be at any particular place or building on the company's property at any certain time, but went to the different places and buildings where he had work to do, when in his judgment his services were needed there.

The company owned a number of buildings situated on its mining property, including an office building, three machine shops and other buildings. It maintained roads on its land for its own use and for the use of its employees and those having business with it and with its employees. On one of these roads, about 700 feet north of its intersection with another road on the company's land running east and west, there was a house owned by the company and used by Andreau as his residence.

On the morning when the minor was injured, Andreau left his work at some place on the company's property not shown by the agreed statement and went to his residence in order to listen to the morning newscast over his radio. He was returning from his residence in an automobile and was on his way to one of the company's machine shops, where he had work to do, when the minor was struck by the automobile. The point at which the minor was struck is in the ocmpany's road running east and west, a few feet southwest from the intersection of that road with the road running north and south on which the residence is situated. This point is 150 or 200 feet east of the machine shop to which Andreau was going, and to that machine shop Andreau drove and there he parked his car. He testified that his automobile did not strike the minor.

Andreau was not given permission by the president of the company to leave the mining property during work hours to go to his residence to listen to the radio or for other personal

matter. The president of the company did not know that Andreau had gone to his residence to listen to the radio. Andreau kept none of the company's tools or blueprints at his residence.

Petitioner's construction of the agreed facts is that when Andreau went to his residence to listen to the radio he turned aside from his employer's business for a purpose wholly disconnected with his employment and thereby departed completely from the scope of his employment, and it contends that it is not liable for the injuries suffered by the child because he was struck by the automobile while Andreau was returning from that departure to resume his duties. Petitioner's position is supported by the decisions in this state, if Andreau in fact completely departed from the scope of his employment and if the accident occurred while he was returning, and not after he had returned, to his work. Southwest Dairy Products Co. v. De Frates, 132 Texas 556, 125 S. W. (2d) 282, 122 A. L. R. 854; J. C. Penney Company v. Oberpriller, 141 Texas 128, 170 S. W. (2d) 607; Bresnan v. Republic Supply Co., 63 S. W. (2d) 1105 (application for writ of error refused, 123 Texas 628.) The Court of Civil Appeals based its decision, that Andreau, at the time of the accident, was acting within the scope of his employment, upon two conclusions drawn from the agreed facts: The first being that Andreau "had not abandoned the company's business but was still, while at the residence and when on the road from there to the machine shop, available in his supervisory capacity"; and the second conclusion that "if it might be said he had turned aside definitely from the company's business he had returned, and was on the company premises right in the midst of his work and on a company road leading directly to the particular shop where he had work to do."

Since we are in agreement with the second of the two conclusions of the Court of Civil Appeals above stated, it is unnecessary to express an opinion as to the first. Assuming that Andreau definitely turned aside from his employment when he went to his residence to listen to the radio, we are of the opinion that, according to the agreed facts, he was not merely returning to resume his employer's business when the boy was struck, but had returned. We believe that the rule appropriate to the peculiar facts of this case is that the relation of master and servant, temporarily suspended by the servant's departure from his work to accomplish a purpose of this own not connected with his employment, is re-established when he has returned to the place where the deviation occurred or to a place where in the performance of his duties he is required to be. This is the substance of the rule as stated in Corpus Juris, Vol. 42, pp. 1112-

1113, Sec. 871 and in Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 5, p. 212, Sec. 3051, which are cited in the opinion of the Court of Civil Appeals. The opinion in Southwest Dairy Products Co. v. De Frates, 132 Texas 556, 560, 125 S. W. (2d) 282, 122 A. L. R. 854, by the use of the phrase "returning to the zone of his employment," indicates recognition of the foregoing principle.

The texts of Corpus Juris and Blashfield's Cyclopedia, above cited, are well supported by authorities from other states. In one of the cases cited, the opinion was expressed that when the servant returned "to a point that might be said to be within the zone of his employment," the master's liability for his acts afterward occurring in the conduct of the business was re-established. Orris v. Tolerton & Warfield Co., 201 Iowa 1344, 207 N. W. 365.

In another case, it was held that if the accident occurred when the employee was "at a place where he might properly be," were he confining his conduct strictly to the business of the employer, and if his movements at that place were impelled by a purpose to accomplish the employer's business, the jury was authorized to find that he was within the scope of his employcent, although he had theretofore deviated on an errand for a third person. Dale v. Armstrong, 107 Kans. 101, 190 Pac. 598.

The residence to which Andreau had gone to listen to the radio, although on the company's property, was somewhat removed from the buildings of the plant. When the boy was struck, Andreau had traveled a little more than 700 feet from the residence and had reached an open area surrounded by the buildings of the plant. He was on the company's road running east and west and between its office building and one of the machine shops to which he was going and where he had work to do. The machine shop was 150 to 200 feet west of the point where the accident occurred and the office building was a shorter distance to the east. There were two other machine shops nearby, to the southwest and about 60 to 100 feet distant. Andreau was then within an area and at a place where the performance of his duties constantly took him. He had no particular place to work, his duty being to supervise other mechanics and to see that the company's machinery was kept in good condition, and in the performance of those duties he went from place to place and from building to building as his own judgment directed. He was, at the particular time, "within the zone of his employment" and about his master's business.

The facts in Missouri, Kansas & Texas Ry. Co. v. Edwards, 67 S. W. 891, in which writ of error was refused, are very similar to those in this case. While the plaintiff was standing near one of the defendant's passenger trains at a depot, where he had gone to meet some friends, defendant's brakeman, in the effort to board the outgoing train, carelessly ran into him and knocked him under the moving train. The defense was that the railway company was not liable because the brakeman was not then in the discharge of his duties. The brakeman's place of duty was on the opposite side of the train, but he had gone to a saloon or restaurant on the side of the train where the accident occurred, and was hurriedly returning to board the train, then just moving away, when he ran against the plaintiff. The court held as a matter of law that, while the brakeman "may not have been on his master's business in stepping aside to the saloon or restaurant, * * * he was when he ran over appellee in an effort to resume his accustomed place of service."

For the reasons given, the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court June 9, 1943.