### EAVES  v.  WILLINGHAM et al.

#### No. 12616.

Court of Civil Appeals of Texas.

Galveston.

Nov. 12, 1953.

Richard H. Powell and Robert L. Sharp, Jr., Houston, for appellant.

Fulbright, Crooker, Freeman & Bates and Royce R. Till, Houston, for appellees.

CODY, Justice.

This was a suit by plaintiff, Kathleen Eaves, to recover damages to her automobile which resulted from a collision between it and a truck which was being driven by defendant Wortham. It was undisputed that the truck in question belonged to defendant, E. E. O'Brien; but plaintiff alleged that at the time of the collision defendant Wortham was driving the truck as the servant of A. C. Willingham, doing business as the Gulf Southwestern Transportation Company, and alleged in the alternative that, if not then driving the truck as the servant of defendant Willingham, defendant Wortham was driving the truck at the time as the servant of defendant E. E. O'Brien.

It is sufficient to state with respect to the procedure in the trial that the court submitted the case to the jury upon special issues. And that in answer to the special issues the jury convicted the driver of the truck of negligence, which was the proximate cause of plaintiff's damages, and the parties agreed that the amount of damages sustained by plaintiff was $439.30. The jury further found that at the time of the collision defendant Wortham was the employee of Willingham, and was acting in the scope of his employment; and that he was not then the employee of defendant O'Brien, nor was he acting in the course of the employment of O'Brien. The jury further found that the defendant truck driver had not been discharged by defendant Willingham prior to the collision, and additionally found that the lease agreement under which defendant O'Brien had leased his truck to defendant Willingham was still in effect at the time of the collision.

The court declined to grant the plaintiff's motion for judgment against defendant Willingham upon the verdict; but granted defendant Willingham's motion for judg-ment that plaintiff take nothing against him. The court accordingly granted plaintiff judgment against defendant Wortham for the sum of $439.30. The court further rendered judgment that plaintiff take nothing against defendant O'Brien. Only the plaintiff has appealed from the judgment, and she has limited her appeal to the action of the court of rendering judgment in favor of defendant Willingham, notwithstanding the verdict.

Plaintiff has predicated her appeal upon two formal points which boil down, as indicated, to the complaint that the court erred in granting judgment, notwithstanding the verdict, that plaintiff take nothing against defendant Willingham. We overrule these points.

█ It requires no citation of authority to support the proposition that if there was any evidence of probative force to establish that defendant Wortham was the employee of defendant Willingham, and acting in the scope of his employment at the time of the accident, the court erred in rendering judgment notwithstanding the verdict, that as to defendant Willingham, plaintiff take nothing.

So far as is necessary to the determination of this case, the evidence was as follows:

Defendant Willingham conducted a trucking business under the name of the Gulf Southwestern Transportation Company which he described as an "irregular route interstate commerce carrier of heavy commercial equipment and oil field equipment." In addition to the trucks and trailers which he owned, he from time to time leased additional hauling equipment. Sometime in December, 1951, he leased, in writing, a truck from defendant O'Brien for the term of a year. By its terms the lease could be terminated by giving thirty days' written notice, and also for cause.

For some undisclosed reason no copy of the lease was introduced in evidence. But from the evidence as to the provisions it contained it appears that, for compensation

for the use of his truck and the driver thereof, O'Brien received 60% of the revenue earned by the use of his truck, and O'Brien paid the driver of his truck, who was, as indicated above, defendant Wortham, and who happened to be the nephew of O'Brien's wife. The driver took his orders from defendant Willingham's dispatchers. The last trip made by defendant Wortham for Willingham consisted of hauling a load from Houston to Pittsburg, Pennsylvania, in a trailer which was pulled by O'Brien's truck. Pursuant to orders Wortham proceeded from Pittsburg to Canton, Ohio, where Willingham maintained a place of business, and at which place he assembled freight to be hauled to the Southwest. While waiting for his load, Wortham learned that his wife, in Houston, was ill and phoned to O'Brien to ask his permission to come home, and use the truck for that purpose, and was told by O'Brien to use his own judgment. He decided to come back to Houston, but left the trailer in Canton pursuant to Willingham's agent's instructions.

■ According to Wortham's testimony, he was not informed by any agent of Willingham in Canton that if he left without a load he was fired. According to O'Brien's testimony, Willingham did inform him that if Wortham left Canton without waiting for a load that Wortham was fired. But O'Brien denied that Willingham had also notified him that if Wortham so returned that the lease was cancelled. For purposes of testing the propriety of the court's action in directing a verdict, such testimony is accepted as true.

Wortham also testified that it was his duty to keep the truck "gassed up" so that he would be ready to make a trip when directed so to do by a dispatcher. He testified that with the acquiescence of Willingham, he kept the truck at his home. Further, that when he got back to Houston,

and after seeing his wife, he got in the truck to go and get it "gassed up", so that he would have it ready when he received a call from a dispatcher. It was while Wortham was on his way to a filling station to get the truck "gassed up" that the collision occurred. This occurred in March, 1952, some three months after the date of the lease.

■ For present purposes we assume that O'Brien's admonition to Wortham to use his own judgment as to whether he should depart from the course of his employment and come home without the consent of his employer was not a warning that he at least ran the risk of being fired. But under the evidence Wortham undeniably did depart from the course of his employment when he left Canton without a load, and to serve a purpose which was exclusively his own. Under his testimony the conclusion is compelled that he had, pursuant to his duties, "gassed up" to be ready for orders, when he reached Canton. When he returned to Houston, the best face that can be put on his action in proceeding to the filling station to "gas up" is that he *purposed* to resume the duties incumbent upon him at the time that he proceeded on his way to "gas up." In any case, it was Wortham's own wrong, in departing from his master's business, "that created the duty to return, and in returning he was but undoing that wrong." Southwest Dairy Products Co. v. De Frates, 132 Tex. 556, 125 S.W.2d 282, 284, 122 A.L.R. 854. We can add nothing to the opinion in that case which was written by the present Chief Justice of our Supreme Court, and, in addition to being in answer to certified questions, was, of course, adopted by the Supreme Court.

It is therefore ordered that the judgment of the trial court be affirmed.

Affirmed.