**Opinion issued May 28, 2026**



In The

# Court of Appeals

For The

# First District of Texas

———————————————

**NO. 01-25-00467-CV**

———————————————

**CITY OF HOUSTON, Appellant**

**V.**

**SHAMAKA T. BARFIELD, Appellee**

———————————————

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-57422**

———————————————

## MEMORANDUM OPINION

Shamaka T. Barfield sued the City of Houston for negligence following an accident involving a Metropolitan Transit Authority bus and a City of Houston vehicle. The City filed a motion for summary judgment arguing it is immune from suit because the City's employee—a public works employee who was driving the

car that collided with the bus Barfield was traveling on—was not in the course and scope of her employment when the accident occurred. The trial court denied the City's motion and this appeal ensued.

We reverse and render.

## Background

Barfield was a passenger on a bus traveling in Harris County, Texas. According to Barfield, the bus was traveling west on Washington Avenue. Meanwhile, Kechi Hainsworth-Watson, a City of Houston ("City") public works environmental investigator, was traveling east on the same street on her way back to her office after completing a site inspection. Before returning to work, Hainsworth-Watson decided to stop at Sonic to buy a drink. She made a left turn in front of the bus into the driveway of the Sonic. As she did so, she collided with the bus. Barfield alleges both Hainsworth-Watson and the driver of the bus were negligent and that their negligence in causing the collision resulted in her sustaining "serious" injuries.[1]

Barfield sued the City under the Texas Tort Claims Act, alleging Hainsworth-Watson was acting in the course and scope of her employment for the City when the accident occurred. Barfield sought damages for past and future

---

[1] Barfield also sued the employer of the bus driver but those claims are not part of this appeal.

medical expenses, past and future physical pain and mental anguish, and past and future physical impairment.

## Summary Judgment Motion

The City filed a traditional motion for summary judgment based on governmental immunity. In support of its motion, the City attached the affidavit of Hainsworth-Watson and a certified copy of the police report from the accident. The City argued that Hainsworth-Watson was not acting within the scope of her employment when the accident occurred because at the time of the accident, Hainsworth-Watson was "driving on a detour to get a drink at Sonic and thus would have been on a break." Barfield did not file a response to the summary judgment motion or object to the summary judgment evidence.

The trial court denied summary judgment and this appeal ensued.[2]

## Standard of Review

Subject matter jurisdiction is implicit in a court's power to decide a case. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). To establish subject matter jurisdiction, a plaintiff must allege facts that demonstrate affirmatively the court's jurisdiction to hear her claims. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "Whether a court has subject matter jurisdiction is a question of law." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226

---

[2]     *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

(Tex. 2004). Because the existence of subject matter jurisdiction is a question of law, we review the trial court's ruling on the City's motion for summary judgment de novo. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivs. Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006).[3]

A governmental unit may raise the affirmative defense of governmental immunity and challenge the trial court's jurisdiction "through a plea to the jurisdiction or other procedural vehicle, such as a motion for summary judgment." *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018). To obtain a traditional summary judgment based on lack of jurisdiction, "a movant must produce evidence showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Town of Shady Shores*, 590 S.W.3d at 551 (citing TEX. R. CIV. P. 166a(c)). The nonmovant "may raise a genuine issue of material fact by producing 'more than a scintilla of evidence establishing the existence of the challenged element.'" *Id.* (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). In our review, "we view the evidence in the light most favorable to the nonmovants by indulging every

---

[3] We also review a trial court's ruling on a summary judgment motion de novo. *City of Houston v. Carrizales*, No. 01-20-00699-CV, 2021 WL 3556216, at *3 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, pet. denied) (mem. op.) (citing *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007)).

reasonable inference and resolving any doubts in their favor." *City of Houston v. Rodriguez*, 704 S.W.3d 462, 470 (Tex. 2024).

## Governmental Immunity

Governmental immunity protects political subdivisions of the state from lawsuits and liability for monetary damages unless their immunity is waived. *See Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*, 646 S.W.3d 329, 332 (Tex. 2022); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) ("Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability for money damages.") (citation omitted). As political subdivisions of the State, cities are "immune from suit unless [their] immunity is waived by state law." *City of Austin v. Powell*, 704 S.W.3d 437, 448 (Tex. 2024) (quoting *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022)).

The Texas Tort Claims Act ("TTCA")[4] waives immunity from suit for negligent acts in certain circumstances.[5] *City of Houston v. Gomez*, 716 S.W.3d 161, 165 (Tex. 2025). Relevant to the issues here, the TTCA waives governmental immunity for claims involving the negligent use or operation of a motor-driven

---

[4] TEX. CIV. PRAC. & REM. CODE § 101.001, et seq.

[5] The starting point for our analysis is "a presumption against any waiver until the plaintiff establishes otherwise." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 866 (Tex. 2023).

vehicle. Section 101.021(1) provides that a governmental unit in the state is liable

for:

> (1)     property damage, personal injury, and death proximately caused by
> the wrongful act or omission or the negligence of an employee acting
> within his scope of employment if:
>
>> (A)     the property damage, personal injury, or death arises from the
>> operation or use of a motor-driven vehicle or motor-driven
>> equipment; and
>>
>> (B)     the employee would be personally liable to the claimant
>> according to Texas law[.]

TEX. CIV. PRAC. & REM. CODE § 101.021(1).

## Scope of Employment

In its sole issue, the City argues that it retained its governmental immunity

from Barfield's TTCA claim because Hainsworth-Watson was not acting in the

scope of employment when the accident occurred.

Under the doctrine of respondeat superior, an employer such as the City may

be vicariously liable for its employee's negligent acts "if the employee's actions

are within the course and scope of his employment." *Goodyear Tire and Rubber

Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007) (citing *Baptist Mem'l Hosp. Sys. v.

Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)). "[A]n employer is liable for its

employee's tort only when the tortious act falls within the scope of the employee's

general authority in furtherance of the employer's business and for the

accomplishment of the object for which the employee was hired." *Id.* (citing

6

*Minyard Food Stores, Inc. v. Goodman*, 80 S.W.3d 573, 577 (Tex. 2002)). To be within the scope of employment, the employee's acts must be "of the same general nature as the conduct authorized or incidental to the conduct authorized[.]" *Id.* (citing *Minyard Food Stores*, 80 S.W.3d at 577). If the employee "deviates from the performance of his duties for his purposes, the employer is not responsible for what occurs during that deviation." *Id.* (citing *Minyard Food Stores*, 80 S.W.3d at 577); *see Alief Indep. Sch. Dist. v. Velazquez*, No. 01-22-00444-CV, 2023 WL 3555495, at *8 (Tex. App.—Houston [1st Dist.] May 18, 2023, no pet.) (mem. op.) ("Generally, evidence that an employee was on a 'personal errand' when an accident occurred 'refutes an allegation that [she] was acting in the course and scope of [her] employment.'") (quoting *Molina v. City of Pasadena*, No. 14-17-00524-CV, 2018 WL 3977945, at *4 (Tex. App.—Houston [14th Dist.] Aug. 21, 2018, no pet.) (mem. op.)). "An employee who has turned aside, even briefly, for a personal errand is no longer in the scope of employment until [she] returns to 'the path of duty.'" *Id.* (quoting *Molina*, 2018 WL 3977945, at *4).

There is a rebuttable presumption that an employee traveling in his employer's vehicle is operating under the course and scope of his employment when involved in an accident. *Molina*, 2018 WL 3977945, at *4 (citing *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354, 357–58 (Tex. 1971)); *Lara v. City of Hempstead*, No. 01-15-00987-CV, 2016 WL 3964794, at *4 (Tex. App.—

Houston [1st Dist.] July 21, 2016, pet. denied) (explaining presumption is only procedural tool and once rebutted, it disappears from case). If the employer proffers evidence rebutting the presumption, the burden shifts back to the plaintiff to produce other evidence that the driver was acting in the course and scope of her employment at the time of the collision. *City of Houston v. Carrizales*, No. 01-20-00699-CV, 2021 WL 3556216, at *4 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, pet. denied) (mem. op.) (citations omitted).

It is undisputed that Hainsworth-Watson was an employee of the City and was driving a City vehicle when the accident occurred. Thus, the evidence "raised a presumption that [Hainsworth-Watson] was in the course and scope of [her] employment at the time of the accident." *See Molina*, 2018 WL 3977945, at *4. However, "[e]vidence that the employee was on a personal errand to eat at the time of the accident refutes an allegation that [s]he was acting in the course and scope of h[er] employment." *Id.* (citing *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 637 (Tex. App.—San Antonio 1993, no writ)); *see Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 47 (Tex. App.—Fort Worth 2002, no pet.) ("[W]here the evidence shows that the driver turned aside, even briefly, for a personal errand, the presumption is rebutted.") (citing *Robertson Tank Lines*, 468 S.W.2d at 359); *see also Carrizales*, 2021 WL 3556216, at *4 (concluding that if at time of accident, "there is evidence that the driver was on a personal errand, or otherwise not in the

8

furtherance of her employer's business, the presumption [of employment] vanishes.") (citing *Mejia-Rosa v. John Moore Servs.*, No. 01-17-00955-CV, 2019 WL 3330972, at *7 (Tex. App.—Houston [1st Dist.] July 25, 2019, no pet.) (mem. op.)); *Gant v. Dumas Glass & Mirror, Inc.*, 935 S.W.2d 202, 212 (Tex. App.— Amarillo 1996, no writ) (concluding course-and-scope presumption "vanished when [employee] testified that at the time [of collision] he was returning from attending [to] his personal business of eating lunch en route to work"). Once the presumption vanishes, the burden shifts to the plaintiff to "produce other evidence that the driver was acting in the scope of her employment at the time of the collision." *City of Houston v. Rios*, No. 01-23-00794-CV, 2024 WL 3571649, at *6 (Tex. App.—Houston [1st Dist.] July 30, 2024, pet. denied) (citing *Robertson Tank Lines*, 468 S.W.2d at 358).

In support of its summary judgment motion, the City attached the affidavit of Hainsworth-Watson and a certified copy of the police report from the accident. In her affidavit, Hainsworth-Watson stated that she works as an Environmental Investigator Level IV for the Houston Public Works Department, and that she held the same position, at a lower level, when the accident occurred. In her job, Hainsworth-Watson inspects industrial facilities for enforcement of regulations promulgated by the Environmental Protection Agency and the Texas Commission on Environmental Quality. She "oversee[s] and perform[s] comprehensive

9

technical investigative work relative to the detection, analysis and elimination or control of environmental pollutants and contaminants." She explained that on a typical day, she may conduct multiple inspections and then return to the office to scan the reports into the computer system and finish paperwork related to the work done throughout the day. According to Hainsworth-Watson, on the day of the accident she was returning to her office on Washington Avenue when she "decided to pull into Sonic to get a drink." The accident occurred when she was turning into Sonic. The police report confirms Hainsworth-Watson's affidavit. The report states that Hainsworth-Watson "turned when unsafe[,] causing the accident."

Barfield did not file a response to the City's motion for summary judgment or otherwise produce evidence in support of course and scope. Thus, the only evidence before the trial court when it ruled on the City's motion was the evidence presented by the City. Based on that evidence, the City argues it was entitled to immunity and thus the trial court erred in denying its motion.[6] The City relies on

---

[6]     The City includes in its brief a chart of eleven scope-of-employment cases, ten of them involving government entities. With two exceptions, the cases in which the government employee was found not to be acting in the scope of employment involved commuting to or from work, which is not the case here. Only two of the cases in which the employees were found to not be in the course and scope of employment involved accidents that occurred when the government employee returned to duty after lunch. *See Molina v. City of Pasadena*, No. 14-17-00524-CV, 2018 WL 3977945, at *1, 5 (Tex. App.—Houston [14th Dist.] Aug. 21, 2018, no pet.) (mem. op.); *City of Houston v. Carrizales*, No. 01-20-00699-CV, 2021 WL 3556216, at *5 (Tex. App.—Houston [1st Dist.] Aug. 12, 2021, pet. denied) (mem. op.). And in one of the cases, a police officer who caused a collision while returning to work after lunch was found to be acting within the course and scope

*Cameron Int'l Corp. v. Martinez*, a non-governmental entity case. 662 S.W.3d 373

(Tex. 2022). In *Cameron*, a Cameron employee ("Mueller") traveled to another

town after work "on his own time to have dinner and to restock his personal

groceries and fuel." *Id.* at 377. Mueller had traveled to the town at the invitation of

his supervisor, who asked him to "remain on voluntary standby for potential work

. . . the next day." *Id.* at 375. After leaving a gas station, Mueller was involved in a

car accident that resulted in two deaths. *Id.* The survivors and decedents' estates

sued Cameron and others, alleging Mueller was acting in the scope of employment

when the accident occurred. *Id.* at 376. The trial court granted Cameron's summary

judgment motion, which argued that Mueller was not an employee or acting within

the scope of employment when the accident occurred. *Id.* The court of appeals

reversed, holding the summary judgment evidence "raised fact issues" as to

---

of his employment when the accident occurred. *See City of Houston v. Fisher*, No. 14-21-00573-CV, 2023 WL 2322971, at *1, 5 (Tex. App.—Houston [14th Dist.] Mar. 2, 2023, pet. denied) (mem. op.). Because the inquiry into whether an act was committed in the course and scope of employment is "unavoidably fact-specific," we do not find the chart persuasive. We focus instead on the facts of this case and the specific cases discussed by the parties. *See City of Houston v. Holmes*, No. 01-25-00359-CV, 2026 WL 803986, at *4 (Tex. App.—Houston [1st Dist.] Mar. 24, 2026, pet. filed) (mem. op.) (citing *Tex. Mut. Ins. Co. v. Jerrols*, 385 S.W.3d 619, 627 (Tex. App.—Houston [14th Dist.] 2012, pet. dism'd)); *see also generally Jerrols*, 385 S.W.3d at 627 ("In part, the absence of a bright-line rule reflects the unavoidably fact-specific nature of the inquiry into course and scope."); *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 642–43 (Tex. 2015) (observing course-and-scope analysis is generally "fact-intensive . . . focusing on the nature of the employee's job, the circumstances of the travel, and any other relevant facts"); *N.H. Ins. Co. v. Dominguez*, 661 F. App'x 267, 270 (5th Cir. 2016) ("There is no bright line rule in the fact-intensive 'course and scope' inquiry.") (interpreting Texas law).

whether Mueller was acting in the scope of his employment when the collision occurred, adding there was evidence in support of the plaintiffs' claim "that Mueller's purchases of food and water during his trip constituted 'a necessary service in furtherance of Cameron's business[.]'" *Id.* The Supreme Court reversed and rendered judgment for Cameron, stating:

> Nearly early every task that supports a worker's personal needs, including travel to and from work, indirectly benefits the employer. By traveling to the workplace, a worker makes his services available, "and in that sense he furthers the affairs or business of his employer by making the journey." *Shelton v. Standard Ins. Co.*, 389 S.W.2d 290, 292 (Tex. 1965). Not every journey, however, falls within the course and scope of an employment relationship. *Id.* To except from the general rule Mueller's travel to obtain personal groceries and fuel at his choice—and not at Camero's direction—would turn nearly any personal grocery errand into a special mission on an employer's behalf, a concept that we rejected in *Painter. See* 561 S.W.3d at 138 (explaining that an employee's decision to "conduct a personal errand" while otherwise engaged in his employer's business does not give rise to vicarious liability for travel in connection with that errand). Workers often travel for personal necessities during the workday or leave for a meal before returning to work, but these activities do not arise from the business of the employer. Rather, they are daily tasks in which workers and nonworkers alike engage, carrying the same attendant risks. *See Smith v. Tex. Emps.' Ins. Ass'n*, 129 Tex. 573, 105 S.W.2d 192, 193 (Tex. [Comm'n Op.] 1937) (discussing the limits of vicarious liability, which does not extend to prosaic risks). In determining that purchases of personal food and water raise some evidence that the special-mission exception applies, the court of appeals did not recognize the well-settled limits of the doctrine and its underlying rationale.

*Id.* at 377.

12

The City also relies on *City of Houston v. Carrizales* in support of its argument that Hainsworth-Watson was not in the scope of her employment when the collision with Barfield occurred. 2021 WL 3556216. Carrizales was involved in an accident with a City of Houston sewer jet truck. *Id.* at *1. When the accident occurred, the truck's driver ("Griffin") was driving the truck back to her place of work after stopping by her home for lunch. *Id.* at *2. Griffin "was alone in the truck when the collision occurred. She explained that if she had been investigating a stoppage or answering a request for service or investigating or inspecting a sewer complaint, someone else would have been in the truck with her because '[i]t takes two people to perform the job.'" *Id.* Carrizales sued the City under the TTCA and the City moved for summary judgment based on governmental immunity. *Id.* at *1. Carrizales argued there was a genuine issue of material fact over whether Griffin was acting in the course and scope of her employment "because Griffin stated in her deposition that she 'was on the clock' when the collision occurred but also stated that she was not required to 'clock out' during the day, and she explained that 'even while we are on our break, we are on the clock.'" *Id.* at *2. The trial court denied the summary judgment motion. *Id.* at *3.

This Court reversed, holding that Griffin's testimony that she was returning to her workplace "alone after lunch when the accident occurred" rebutted the presumption that she was acting in the course and scope of her employment when

13

the accident occurred. *Id.* at \*5. And we relied in part on Griffin's deposition testimony "that if she had been performing her job duties, such as investigating a stoppage, answering a request for service, or investigating or inspecting a sewer complaint, someone else would have been in the truck with her because 'it takes two employees to perform the job.'" *Id.*[7]

Barfield argues that notwithstanding those authorities, the trial court properly denied summary judgment because Hainsworth-Watson was on a "special mission" for the City when the accident occurred. She relies on *City of Houston v. Mejia*, 606 S.W.3d 901 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) and *City of Houston v. Love*, 612 S.W.2d 211 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.), but neither carries the day here.

In *Mejia*, a police officer ("Gallagher") was involved in a traffic accident while driving a city-owned vehicle. Gallagher finished her shift at 4 p.m. on the day of the accident. 606 S.W.3d at 906. Gallagher's husband, a Houston Police Department ("HPD") lieutenant, asked her to pick up his city-issued vehicle from the city garage and to drive it to their home so he would have his car available at

---

[7]    *Carrizales* is useful to the extent it stands for the proposition that the government employee was not in course and scope when returning from a lunch break. 2021 WL 3556216, at \*4. But there was additional evidence in *Carrizales* that was not available here—that the government employee could not have been in the course and scope of employment when the accident occurred because she was alone in her vehicle and it took two people to engage in her job duties. *Id*. at \*5. *Carrizales* is thus inapposite.

the start of his next shift. *Id.* After picking up the police car and on her regular commute home, Gallagher was involved in an accident with the plaintiffs' vehicle. *Id.* at 904. Gallagher testified that at the time of the accident, she had no official duties and, other than still being on call, was not being paid for her time. *Id.* The City of Houston moved for summary judgment arguing that Gallagher was not acting in the scope of her job as a police officer but was, rather, "just another commuter on a Friday evening heading home to enjoy time off on the weekend." *Id.* at 906. The plaintiffs responded that Gallagher was driving a city-owned vehicle, carrying out instructions issued by an HPD officer who outranked her, and that HPD "would derive benefit from her actions." *Id.*

The trial court denied the City's summary judgment motion and the court of appeals affirmed. *Id.* The appellate court observed that Gallagher's affidavit reflected that "her husband (a superior officer employed by Gallagher's employer) asked her to pick up his City-issued vehicle from the City garage so her superior officer would have the vehicle available at the beginning of his shift (a benefit to Gallagher's employer, HPD)." *Id.* Therefore, Gallagher was not a mere commuter on the way home from work. *Id.*

*Love* also involved an accident involving a police officer ("Foulis"). 612 S.W.2d at 212. Foulis was authorized to keep his police car at his home and to drive the car to and from work and use it while he was on duty. *Id.* One day when

15

Foulis was not required to report to the police station, he drove the police car to play golf. *Id.* After his golf game, Foulis drove to the city garage "to get gasoline and have the oil changed." *Id.* Afterward, on the way home, Foulis struck another car. *Id.* The occupants of the car sued Foulis and the City of Houston. *Id.* A jury found in favor of the car's occupants and the trial court entered judgment against the City. *Id.* On appeal, the City argued there was no evidence to support the jury's affirmative answer to the question of whether "at the time of the occurrence in question, [Foulis was] engaged in the service of the City of Houston and in furtherance of its business, whether on its premises or elsewhere[.]" *Id.* Concluding there was evidence to support the jury's finding, our sister court noted that Foulis "was required to have only the City Garage service his police vehicle" and that it was "Foulis' responsibility to keep track of his mileage and to maintain the vehicle in good operating condition." *Id.* at 213. As noted, the accident occurred as Foulis drove home from having his police car serviced at the city garage. *Id.* Foulis testified that he was "clocking a speeder immediately prior to the collision." *Id.* In affirming the trial court's judgment, the court of appeals explained:

> An employee's arrangement of the performance of his duties in a manner consistent with his personal convenience does not take him out of the scope of his employment. *Dictaphone Corp. v. Torrealba*, 520 S.W.2d 869, 872 (Tex. Civ. App.—Houston (14th) 1975, writ ref'd n. r. e.). Foulis was still engaged in the service of the City of Houston when the accident occurred. He had carried out his responsibility to keep the police vehicle in good operating condition by having it serviced at the City Garage. It was his further duty to

16

> return the vehicle to his home. It was necessary to the functioning of the accident division of the Police Department that Foulis have the police car at his disposal twenty-four hours a day since he could be called upon at any time to investigate a hit and run accident.

*Id.*

We are not persuaded by *Mejia* or *Love.* In *Mejia*, the city employee was not merely commuting on the way home from work after running a personal errand. Rather, at the time of the accident, the police officer was acting at her supervisor's express direction to pick up his city-issued car from the city garage and drive it to their home so he could use the car for work. And in *Love*, the accident occurred when the police officer was attending to his duties to maintain his patrol car by having it serviced at the city's garage. In both cases, the police officers involved in the accident were driving city-owned cars and performing work-related duties at the direction of their supervisors.

Unlike the officers in *Mejia* and *Love*, Hainsworth-Watson had deviated from her job duties and was on her way to Sonic to buy a drink when the accident occurred. In that respect, this case is more like *Molina*, where the plaintiff was injured in an automobile accident with Rendon, an inspector for the city's engineering department. 2018 WL 3977945, at *1. Rendon, a full-time city employee, was driving a city-owned vehicle when the collision occurred. *Id.* Like Hainsworth-Watson, Rendon's job comprised several site inspections each day, and he drove from site to site in his city-owned vehicle. *Id.* Rendon was allowed a

one-hour lunch break, and he was allowed to use his city-owned vehicle to drive to lunch. *Id.* On the day of the accident, Rendon had just left lunch and exited the restaurant's parking lot, headed to a site inspection. *Id.* As he pulled into the street, he struck Molina's vehicle. *Id.*

Molina sued the city under the TTCA and the city averred in a plea to the jurisdiction that Rendon was not in the course or scope of his employment when the accident occurred. *Id.* at *2. Molina argued that Rendon was in the course and scope of his employment when the accident occurred "because, at the time of the accident, he was driving to a location where his employer had instructed him to go in furtherance of his employer's interests," and there was no evidence Rendon was "off the clock" when the accident occurred. *Id.* The court concluded that because the officer was traveling in his employer's vehicle at the time of the accident, there was a rebuttable presumption that Rendon was acting within the scope of his employment when the accident occurred, but that the presumption was rebutted because evidence showed that Rendon (1) was not conducting his employer's business at the time of the accident; (2) "had deviated from the performance of his duties (*i.e.*, to inspect concrete pours, paving of streets, drainage, water lines, sewer lines, pump stations, and water tanks, etc.) to eat lunch, albeit with the City's permission"; (3) "had not resumed those duties" when the accident occurred; and (4) "was in the process of returning to work" at his next inspection site when he

18

struck Molina's vehicle. *Id.* at *4–5. The court noted that even if the accident occurs "while an employee is 'returning to the zone of his employment,'" liability is not fixed against the employer. *Id*. (citing *Sw. Dairy Prods. Co. v. De Frates*, 132 Tex. 556, 560, 125 S.W.2d 282, 284 (1939)). The court held that the trial court had properly granted the City's plea to the jurisdiction because the evidence established that Rendon was not in the course and scope of his employment when Molina was struck. *Id.* at *6.

As in *Molina*, we similarly conclude that summary judgment should have been granted in favor of the City. Barfield established that Hainsworth-Watson was traveling in a City vehicle at the time of the accident. There was therefore a rebuttable presumption that Hainsworth-Watson was acting within the scope of her employment when the accident occurred, but that the presumption was rebutted by the City when it presented evidence that Hainsworth-Watson had deviated from her job duties and was on her way to Sonic to buy a drink when the accident occurred. Hainsworth-Watson was not working at the direction of the City or carrying out the City's business when the collision occurred. Once the presumption vanishes, the burden shifts to the plaintiff to "produce other evidence that the driver was acting in the scope of her employment at the time of the collision." *City of Houston v. Sanchez*, No. 14-23-00152-CV, 2024 WL 3713206, at *2 (Tex. App.—Houston

19

[14th Dist.] Aug. 8, 2024, no pet.) (mem. op.) (citing *Robertson Tank Lines*, 468 S.W.2d at 358).

Barfield did not file a response to the City's motion or present any evidence raising a fact issue on course and scope. Thus, taking as true all evidence favorable to Barfield and indulging every reasonable inference and resolving any doubts in her favor, as we must, we hold that the evidence failed to raise a genuine issue of material fact as to whether Hainsworth-Watson was acting within the course and scope of her employment at the time of the accident.

## Conclusion

We reverse and render judgment granting the City's motion for summary judgment and dismissing Barfield's claims against the City for lack of jurisdiction.


Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.