CONCEPCION PLACENCIA V. WESTERN UNION TELEGRAPH COMPANY.

No. 8079. Decided June 2, 1943.
(172 S. W., 2d Series, 86.)

248

*Robert L. Holliday* and *Harold L. Sims,* both of El Paso, for petitioner.

It was error for the Court of Civil Appeals to reverse the judgment of the trial court, and in holding that at the time of the accident Saul Anguiano was not acting within the scope of his employment but was on a mission of his own. American National Ins. Co. v. Shepperd 91 S. W. (2d) 439; Texas Power & Light Co. v. Denson, 125 Texas 383, 81 S. W. (2d) 36; 5 Blashfield Cyc. of Auto Law, 191.

*Francis R. Stark,* of New York City, *Kemp, Smith, Goggin & White,* all of El Paso, for respondent.

MR. JUDGE TAYLOR of the Commission of Appeals, delivered the opinion for the Court.

Concepcion Placencia on behalf of himself and his wife brought this suit against Western Union Telegraph Company for damages growing out of the death of their minor child, Solomon, who was run over by an automobile owned and operated by Saul Anguiano. Plaintiff alleged that defendant com-

pany had Anguiano in its employ as a messenger for the delivery of telegrams and packages, and that on October 3, 1939, while the said Anguiano was on duty and was working for defendant and was acting within the scope of his employment, "he took a large number of * * * tablets of barbital * * * and was rendered wholly incompetent to operate a motor vehicle; * * * that when * * * in such condition he negligently * * * drove said motor vehicle into * * * said Solomon Placencia," thereby causing his death. The only other allegation of negligence was that "defendant * * * after learning of the incompetent and unfit condition of * * * Anguiano, * * * negligently permitted him to operate the motor vehicle in continuing his work * * *."

Defendant denied generally the allegations of plaintiff. The trial court tried the case without a jury and made the following controlling findings of fact:

"* * * on the 3rd day of October, 1939, Saul Anguiano was in the employ of defendant Western Union as a messenger, working at the main office * * * in the City of El Paso, the hours of duty assigned to him that day being from eight A. M. * * * to two * * * P. M.; * * * it was Anguiano's duty to report to the main office and check out; that (day) * * * Anguiano went to 500 Robinson Boulevard * * * and * * * picked up a package addressed to Dr. Wickliffe Curtis, * * * which had been incorrectly addressed, and it was Anguiano's duty to return this package to the main office of the company; * * * on his return trip Anguiano failed to do so and left the package in the rear of his automobile; * * * after that Anguiano made other deliveries (that) * * * morning * * *, but each time upon his return to the office left this package in his automobile. * * * shortly before twelve o'clock * * * he departed from the main office * * * with his last deliveries * * *; Anguiano completed these deliveries shortly before two o'clock P. M. * * * that day, and * * * did not return to the * * * main office but went to Washington Park in the southeasterly portion of the city * * *, and there took several sleeping tablets; * * * when he left Washington Park he went by a friend's house on Rivera Street and then the branch office of the defendant, located at 1703 Texas Street, where he slept until about four o'clock P. M.; * * * he * * * was next seen driving northerly on Eucalyptus Street turning into Bassett Street, from where he went in an easterly direction on Basset Street at the time * * * he ran over plaintiff's child. * * * His sole purpose in going to Washington Park was to take the sleeping tablets; * * * after leaving Washington Park Anguiano did not receive or deliver any message or packages.

(When he left there) * * * his intention was to return the * * * package addressed to Dr. Wickliffe Curtis to the main office * * *, but he became mentally incapacitated because of the sleeping tablets he had taken, and therefore * * * did not know what he was doing, and had no intention or purpose and was simply wandering aimlessly * * * in his automobile at the time of the accident * * *. After Anguiano left Washington Park he did not deliver or receive any telegrams or packages at the branch office * * * on Texas Street, and performed no services for the defendant while there. * * * At the time of the accident Anguiano was incompetent to operate his automobile and was negligent in so doing, proximately causing the accident and death of plaintiff's child, * * *. When Anguiano left the Texas Street office * * * Mrs. Pippen asked Anguiano if he was able to go home and (he) * * * replied that he was. (When he) * * * left Washington Park he took a route that led directly to his home, as well as to the main office of the defendant; but * * * at the time of the accident * * * was going in an opposite direction * * *." No employee of defendant was negligent other than Anguiano.

The trial court's conclusion of law was as follows:

"Anguiano's intention at the time he left Washington Park was to return the * * * package addressed to Dr. Curtis to the main office * * * and * * * because of his mental condition he had no intention whatever after leaving Washington Park * * *. His original intention (is presumed to have) remained with him until the accident occurred; and because of this presumption I find * * * Anguiano was acting in the scope of his employment for defendant at the time of the accident; and, therefore, defendant is liable to plaintiff for his damages."

From a judgment in favor of plaintiff Western Union Company appealed. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in the company's favor, on the ground that after Anguiano turned aside from its business to go on a personal mission to the Park to take the sleeping tablets, the relation of master and servant was never restored. Opinion not published.

Writ of error was granted the company on the point alleged in its application that the Court of Civil Appeals erred in holding Anguiano was not acting in the scope of his employment at the time of the accident. Whether he was so acting is the only question to be decided.

It will be observed that the trial court found that after Anguiano left the Park where he went on his personal mission "he became mentally incapacitated because of the sleeping tablets he had taken and thereafter did not know what he was doing, and had no intention or purpose of any kind and was simply wandering aimlessly in his automobile at the time of the accident." The trial court further found that Anguiano was acting within the scope of his employment at such time because his intention when he left the Park was "to return the package addressed to Dr. Wickliffe Curtis to the main office" of the company. The trial court's conclusion of law from these facts was that since Anguiano's intention when he left the Park was to return the Dr. Curtis package to the company's office his mental incapacity thereafter resulting preventing his having any other intention; and that his intention to return the pacakage must be presumed to have remained with him until the accident occurred. In other words it appears from the findings of fact and conclusions of law that the trial court based its conclusion that Anguiano was acting within the scope of his employment at the time of the accident upon the finding that when he left the Park his intention was to return the Dr. Curtis package to the defendant's main office, and that such was still his intention after he became wholly incapacitated because of a presumption that such intention continued and had not changed when the accident occurred .It will be observed also, as stated by the trial court in its findings of fact, that "because of his mental condition he had no intention whatever after leaving the Park."

It is unnecessary to discuss whether in law a presumption of continuing intention on Anguiano's part could be indulged under the facts, since, if indulged, the intention would not be controlling.

It is definitely settled in this State that the test of the master's liability "when a servant has completed the purpose for which he departed from his master's business and is returning to resume the duties of his employment," is whether, while returning, he was engaged in his master's business, and not whether "he purposed to resume it." Southwest Dairy Products Co. v. De Frates, 132 Texas 556, 125 S. W. (2d) 282, and cases there cited, including Hill v. Staats (wr. ref.), 187 S. W. 1039, on rehearing, 189 S. W. 85, and Bresnan v. Republic Supply Co. (wr. ref.), 63 S. W. (2d) 1105; also J. C. Penney Co. Inc. v. Oberpriller (Com. App.), 141 Texas 128, 170 S. W. (2d) 602. In the De Frates case this Court speaking through the

commission pointed out that the employee "was no more engaged in his master's business while returning to, than while departing from, his path of duty"; that it was the employee's wrong in departing from his duty that created the duty to return, and that "in returning he was but undoing that wrong."

We are in accord with the holding of the Court of Civil Appeals in the present case that it was necessary for plaintiff to show that Anguiano had actually resumed the company's business before its responsibility for his conduct arose again. We agree also with its holding that the trial court's finding that Anguiano had no intention or purpose of any kind after becoming mentally incapacitated after leaving the Park and was simply wandering aimlessly around in his automobile at the time of the accident," precludes any liability on the part of the company for his actions after leaving the Park.

The trial court's findings of fact relied upon by plaintiff are binding, and must be accepted; but its conclusion of law predicated thereon that Anguiano at the time of the accident was acting in the scope of his employment, was erroneous. The only conclusion of law deducible from the fact found is, under the rule followed in this state, that he was not acting in the scope of his employment at the time of the accident, and that respondent is not liable for his negligence at such time. Anguiano at that time, according to the trial court's finding of fact, had had no intention of any kind on account of his mental condition which had there existed for more than two hours, and until long after the termination of his assigned hours for company duty that day. Anguiano's keeping the Dr. Curtis package in his car throughout the day and whie engaged on his personal mission created a duty on his part (personal, not a company, duty) to return it to the main office. Southwest Dairy Products Co. v. De Frates, supra.

The question involved as to scope of employment was decided contrary to petitioner's contention when this Court refused a writ of error in Hill v. Staats, supra. In that case it was pointed out that there was a conflict of authority on the question, but that "in the face of the conflict," the "more reasonable and just rule" was that which was there followed. The conflict of authorities was again referred to in the De Frates case. In that case the question was before the Court on certified question and in answering it the Court's former holding thereon was adhered to after a thorough consideration of the opinions in the various jurisdictions dealing with the question. See the

following extensive annotations there cited: 22 A. L. R. 1937, 45 A. L. R. 477, 68 A. L. R. 1051 and 80 A. L. R. 725.

The judgment of the Court of Civil Appeals reversing that of the trial court and rendering judgment in favor of respondent is affirmed.

Opinion adopted by the Supreme Court June 2, 1943.