## THOMPSON v. TWIN CITY LUMBER & SHINGLE CO. et al.

### No. 6434.

Court of Civil Appeals of Texas. Texarkana.

March 17, 1949.

Rehearing Denied April 14, 1949.

Brown & Brown, Texarkana, Gene Rowlette, Texarkana, Arkansas, George F. Edwards, Texarkana, Arkansas, for appellant.

Atchley & Vance, Texarkana, Wheeler, Newberry & Wheeler, Texarkana, for appellees.

WILLIAMS, Justice.

In this suit filed by appellant, Ezra Thompson, against Twin City Lumber and Shingle Company, herein styled "Twin City," the former sought to recover damages for personal injuries to his wife and medical expenses incident thereto as the result of the wife's being struck by a pickup truck then owned and being operated by one George Thomas upon a highway in Bowie County.

This appeal involves the disposition made during trial of the sufficiency of the evidence to support appellant's allegations that Thomas as an agent, servant and employee of the defendants was at the time engaged

in the usual course of his employment with Twin City, or in the furtherance of the affairs or business of the latter.

At the close of the evidence offered by appellant, Twin City moved for a peremptory instruction in its favor, assigning therein four reasons, among which that the evidence did not support the allegations that the driver of the truck at the time of the accident was in the scope of his employment or doing anything in furtherance of the business or affairs of Twin City.

The court tentatively overruled this motion. Above issue was not included in the 18 issues submitted to the jury as a result of an announcement in open court by all attorneys that they were willing to and had agreed that the court should decide the issue of whether or not Thomas, driver of the truck, was in the usual course of his employment with Twin City, and whether or not the driver was at the time of the accident engaged in the furtherance of the affairs or business of Twin City; and that they had further agreed that the court could decide such issue of course of employment at some later stage of the trial and before any final judgment was rendered.

The jury was unable to agree upon a verdict. Upon their report of such fact, Twin City, by written motion, requested the court to withdraw the charge from the jury and substitute therefor an instruction to the jury to return a verdict in its favor; and in the event the court should overrule above and should decide to discharge the jury because of inability to agree, to not declare a mistrial but continue the trial in progress, and for judgment in its favor. The latter motion assigned same grounds as had been set out in the original motion for an instructed verdict.

The jury was discharged. A mistrial was not declared and the trial in progress was continued. A hearing on the motion for judgment was set for October 14, 1948, at which time litigants "appeared and announced in open court that they had agreed that the court had the power and authority at this stage of the trial to entertain said motion and to make a decision."

After argument was had, the court found "that at the time of the collision complained of * * * that the said George Thomas was not in the usual course and scope of his employment for * * * Twin City, and was not engaged in the furtherance of any of the affairs or business of said * * * defendant at the time of the accident"; and decreed that "the defendant's motion for judgment upon the undisputed facts, and the findings of the court be, and the same is hereby in all things granted, and accordingly it is further ordered, adjudged and decreed by the court that the plaintiff, Ezra Thompson, take nothing by his suit against the defendant, Twin City * * * *" Appellant attacks above finding and conclusion and contends that "the evidence showed, as a matter of law, that Thomas, the driver, was in the course of his employment at the time of the accident"; and that the court "erred in not holding as a matter of fact that Thomas was in the course of his employment at the time."

On the day of and for two years prior to the accident Thomas was in the general employment of Twin City, at a weekly wage of $50.00 straight time. He was employed to inspect and estimate value of growing timber, and after its purchase by Twin City to supervise a crew in cutting and logging the timber to the mill. After having been with such a crew at its logging site since early in the morning and seeing that the work was proceeding smoothly, he decided to and did leave between one and two o'clock, P.M., and drive to Texarkana, a distance of twenty-two miles, to consult a doctor for treatment. After waiting in the doctor's office he obtained, between four and five o'clock, P.M., a prescription for his ailment. He later drank a cup of coffee, then visited a drug store to have the prescription filled, then to a barber shop for a shave and then back to pick up the prescription, after which he proceeded to drive home. On his way, about 1-½ miles from Texarkana, around seven o'clock, P.M., on November 12, 1947, the pick-up truck he was driving on State Highway 52 struck appellant's wife. It was his testimony that from the time he decided to come to Texarkana and see the doctor up until the

time of the accident he had not done or performed any thing for Twin City; that when he left the drug store it was too late to do any work and did not intend to do any work that night. He testified it was his intention when he got home to feed his stock there; eat his supper; make up a time sheet for the crew he had left in the woods; get a night's rest; and the next morning to return to the woods. Thomas owned the truck in question which he used for his personal errands. He also used this truck in his trips in search of prospective purchases and inspection of timber, in supervising logging operation and hauling feed for the work stock. Twin City would pay him for the gas, oil and cost of any repairs when the truck was on the company's business.

Twin City at various times rented mules from Thomas. On the date involved, all the mules then owned by Thomas except two were being used and stationed by Twin City at above mentioned logging site. When so used, Twin City furnished the feed and paid $1 a day per head as rentals. He had picked up at Twin City that morning a load of feed, some of which was in the truck at the time of the accident. The two mules at his home were not rented out at the time. He did not have any specific hours to go to work or quit but usually would leave his home between five and eight o'clock, A.M., and leave the job around six or seven o'clock, P.M.

Above detailed facts are undisputed in this record. Under the decree entered the trial court gave credence to such facts and found that the driver was not at the time engaged within the usual course and scope of his employment and not then engaged in the furtherance of any affair or business of Twin City. If this be construed as a fact finding, appellant, under the agreement had in open court, is bound thereby. If it be construed as a conclusion of law applied to the undisputed facts, then this record will sustain such a conclusion of law. The mission that Thomas had driven 22 miles to accomplish and his activities in Texarkana were personal to him and in no wise connected with his employment at the time. He was on a personal mission as he drove to his home after his visit in Texarkana, the same as if he had been driving home after attending a church service or witnessing a ball game.

It is the firmly settled rule that when a servant completely departs from his work to accomplish some purpose of his own not connected with his employment, the relation of master and servant is thereby temporarily suspended and the master is not liable for his acts during the period of such suspension." Southwest Dairy Products Co. v. DeFrates, 132 Tex. 556, 125 S.W.2d 282, 283, 122 A.L.R. 854. Appellant recognizes above rule but contends that because Thomas intended to feed the two mules at his home and to make out a time sheet for the crew after he arrived home, or that he would have stopped on the road home and talked about a proposal to sell timber to the company if some one should have hailed him down, that such would place him back in the course of his employment. Assuming that the company owned the two mules, which it did not, and giving credence to what he intended to or might do, as above urged, did not place him back in his employment. "The test of liability is whether he was engaged in his master's business and not whether he purposed to resume it." Southwest Dairy Products v. DeFrates, supra, 125 S.W. at page 284; Placencia v. Western Union Telegraph Co., 141 Tex. 247, 172 S.W.2d 86; Bresnan v. Republic Supply Co., Tex. Civ.App., 63 S.W.2d 1105. The authorities cited by appellant have been examined, and if in conflict with the views here expressed, have been, impliedly at least, overruled by the authorities cited herein.

No error is presented as urged by appellant to the procedure followed by the trial court in the disposition of the motions of Twin City for judgment.

"After the trial court determined that the evidence was undisputed to the effect that the driver of the vehicle which struck appellant's wife was not in the course of his employment with the appellee herein, even though the court had previously overruled appellee's motion for a peremptory instruction, and submitted the

cause to the jury, and had discharged the jury because of inability to agree upon their verdict, the action of the trial court in refraining from declaring a mistrial, and entering judgment for the appellee on such undisputed evidence, was proper." Slay v. Mary Couts Burnett Trust, 143 Tex. 621, 187 S.W.2d 377; Handy v. Olney Oil Co., Tex.Civ.App., 68 S.W.2d 313; Fitts v. Carpenter, Tex.Civ.App., 124 S.W.2d 420. The other complaints urged to the procedure employed are respectfully overruled. No complaint is made to the court's acquittal of negligence of the other defendants.

The judgment will be affirmed.