FARNSWORTH & CHAMBERS COM-
PANY, Inc., Appellant,

v.

J. W. HURST, Sr., et al., Appellees.

No. 13519.

Court of Civil Appeals of Texas.

Houston.

Sept. 15, 1960.

Rehearing Denied Oct. 13, 1960.

King, Sharfstein & Rienstra, John D. Rienstra, Dale Dowell, Beaumont, for appellant.

Quentin Keith, O. J. Weber, Jr., Keith, Mehaffy, McNicholas & Weber, Beaumont, for appellees and intervenor.

D. F. Sanders, Bill J. Sanders, A. W. Dycus, Beaumont, for plaintiffs.

WERLEIN, Justice.

This is a consolidated suit brought by J. W. Hurst, Sr., and six other plaintiffs against Farnsworth & Chambers Company, Inc., Nelson Trahan and Louvie Farmer, to recover damages growing out of a collision occurring in Chambers County, Texas, between a panel truck in which the plaintiffs were riding and a dump truck driven by Trahan and owned by Farmer. Traders & General Insurance Company intervened to recover workmen's compensation benefits and medical expenses it had paid for and on behalf of the plaintiffs. Upon the jury verdict judgment was entered in favor of the plaintiffs against said defendants, and an appropriate decree was made with reference to the intervention of Traders & General Insurance Company. Only Farnsworth & Chambers Company, Inc. has appealed.

Appellant asserts in its first seven Points, grouped together, that the trial court erred in overruling its motion for an instructed verdict because the undisputed evidence shows that Trahan was not within the course of his employment with appellant at the time of the collision in question, and because there is no evidence that appellant authorized or knowingly permitted the truck in question to be driven by Trahan in violation of Article 6687b, Sec. 36, Vernon's Ann.Tex.Civ.St., or that appellant employed Trahan as a commercial operator of a motor vehicle in violation of Sec. 37 of said Article, or was under any duty to ascertain whether Trahan had a valid operator's license in connection with his driving and operating the truck in question, and further that the Court erred in overruling appellant's motion for judgment non obstante veredicto.

In deciding whether said Points should be sustained, this Court must determine whether there is any evidence of probative force in the record which warranted submission of the case to the jury. It is proper to consider only that evidence, if any, which, viewed in its most favorable light, supports the jury findings, disregarding all evidence which would lead to a contrary result. Renfro Drug Co. v. Lewis, 1950, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; Bolstad v. Egleson, Tex.Civ.App., 326 S.W.2d 506; Reese v. Davitte, Tex.Civ. App., 255 S.W.2d 1015, error dism. In applying the foregoing principles of law, we have concluded upon a careful and painstaking examination of the record, that the foregoing Points should be sustained.

Several months prior to the collision, Farmer, who owned two dump trucks, made a verbal agreement with Moon, the superintendent of appellant, to the effect that Farmer would furnish his trucks with drivers to the appellant for the purpose of hauling dirt on appellant's highway construction job, the compensation being $3 per hour for each truck and driver while hauling dirt, out of which sum Farmer was to pay his drivers and service and repair the trucks. Approximately three weeks before the accident in question, Farmer employed Trahan to drive one of his trucks, agreeing to pay him one-third of what the unit, consisting of truck and driver, earned. Two or three days before the collision, Trahan, at Farmer's direction, began driving Farmer's Ford dump truck involved in the accident. Trahan and the truck hauled dirt for appellant the day before the accident and on the night of such day Trahan kept the truck at his home. At the time of the collision Trahan was driving the truck on his way to the job site of appellant. The collision occurred some three to five miles from the job site at about 6:30 a. m. on April 14, 1956. At the time of the collision, the truck was not

carrying any dirt, tools or other property of appellant.

No question is raised as to the collision being caused by the negligence of Trahan. Appellant contends, however, that Trahan's negligence is not imputable to it since he was not at the time of the accident acting for it within the course of any employment with appellant, or operating the truck by virtue of any authority or permission of appellant. We shall set out only the testimony considered pertinent and especially that relied upon by appellees as being favorable to the judgment and jury findings.

Farmer testified that his agreement, or arrangement with Farnsworth & Chambers was that he was to furnish them a truck and driver to haul dirt for $3 an hour, until they were through with the truck, and that Farnsworth & Chambers had supervision to do as they saw fit with it as long as they paid him for its use; that he leased the truck and driver as a unit and that appellant made it clear the truck had to be serviced and ready to do a full day's work when it went out to the job; that he made his arrangements about leasing his trucks with Mr. Moon, appellant's superintendent; that appellant was to pay $3 an hour while the truck was being used to haul dirt and out of the $3 he would have to pay the driver, and service the truck and keep it in repair; that the agreement was that for $3 an hour for actual hauling he would furnish the truck and driver out on the job ready to do a day's hauling, and that was the extent of the agreement that he had.

His testimony is corroborated by that of Mr. Moon, who testified that he told Farmer, like he did the rest when he hired them, that appellant would pay $3 an hour for the truck and driver; that the time would start when he got the truck down to the pit under the crane for loading, and the pay would end when they dumped the last load in the evening on the road; that he had a man there that knocked them off; that the owner of the truck paid for gas and oil and servicing of the truck and repairs.

There is a good deal of testimony with respect to what was done under the oral contract of hiring and considerable speculative and opinion testimony as to what might have been done under the agreement but wasn't actually done. Farmer testified that after he rented the truck and driver to Farnsworth & Chambers, he did not keep trying to direct and supervise the driver but turned that over to them, and that he left it to Farnsworth & Chambers after turning the truck over to them, to retain the truck and driver and use the unit on the dirt hauling job out there until such time as they decided they didn't need the truck; that Farnsworth & Chambers kept time on the truck, and that he, Farmer, had been on the job on a few occasions to pick up his money, but that he did not supervise any of the drivers operating the trucks out on that job; that he turned over to appellant the right to tell the truck and driver where to go and what to do, and when to go, day or night and to direct Trahan's and the truck's movements; that the rental agreement was to continue until terminated either by appellant or by him, and that it had not been terminated at the time of the accident; that after turning the truck over to appellant, he didn't exercise any control over Mr. Trahan and the truck other than to see that it was in condition to run; and that he felt appellant had the right to exercise control and supervision over the truck and driver; that he had to keep the truck and driver subject to their call whenever they wanted it. He further stated that when he testified that appellant had control over the truck only so long as they were paying him $3 per hour, he meant as long as he had a standing contract to work for appellant; that at one time Moon told him to see if he couldn't replace one of his (Farmer's) drivers who couldn't drive a truck; and that he had changed drivers without consulting appellant.

Farmer further testified that if appellant had told him that the truck had to remain on the job site over night it would have been all right with him and made no difference to him so long as they paid him $3 per hour

for the use of the truck and driver, and that appellant had the right to control the details of the work; that appellant could have knocked the truck off at any time and done away with the unit, and that after he turned the truck over to appellant he just washed his hands of it except to have it ready along with the driver for appellant, and that he didn't have any control over the truck or Trahan on the job, and didn't exercise any control after Trahan reported on the job the first day.

He also testified that when the truck was not hauling dirt it was usually kept at Chambers County Motors Company where he was service manager and during such time the trucks and drivers were not under the control of appellant, and he could do with them whatever he wanted to; that appellant had nothing to do with picking Trahan out as a driver; that usually the truck would report for work at 7 o'clock in the morning, and that on some occasions when it would report it would come back because of the weather or a breakdown or something of that nature, and when that happened the truck wasn't under the control of the appellant; that he got paid only from the time the truck started hauling dirt until the time when the truck quit hauling dirt and during the other time he could do with the truck and driver whatever he wanted to as long as appellant was not paying him, and that appellant paid him $3 an hour for whatever number of hours the truck worked; that none of his trucks ever worked at night; that when the weather was good he would sometimes work as many as 12 hours; that Farnsworth & Chambers never knocked off any truck during the daytime and then called the truck back at night; that if they wanted the truck at night it would have been agreeable with him if they paid him; that at the time of the accident the truck wasn't earning any money from appellant because it hadn't got to the job and started hauling; that at the end of each day's hauling the driver of the truck would bring it to the Chambers County Motors Co., under his instructions; that he told his drivers to bring the trucks when they got through hauling dirt and he would service them; that when the driver took the truck home at night it was because he didn't have any transportation from Chambers County Motors to his home; that if a driver did take one of the trucks to his own home it would be by virtue of his (Farmer's) agreement for him to do so; and that if appellant instructed the driver to be out at the job site at 6 or 6:30 in the morning, the driver would take the truck home because Chambers County Motors didn't open that early.

The testimony of Trahan is much along the same line as that of Farmer. We quote from the brief of appellees as follows:

"In brief, Trahan stated that, at the time of the accident, he was going to the Farnsworth & Chambers job, that it was his duty to report to the Farnsworth & Chambers loader, that this Company had a dragline which was used for loading trucks, that the dragline was operated by their operator, that he had been doing this kind of work two or three weeks before the accident, that Farnsworth & Chambers would show him where to start loading, would tell him what time to get to work, would tell him where to take the dirt after it was loaded, told him where to dump it; told him what route he was to take, cautioned him and other drivers to stay in line, could reprimand him if he got out of line, supervised the loading and unloading of trucks, told the drivers when to eat making sure that they ate when the loader was down and that their time of eating coincided with the time that the dragline operator ate."

Trahan also testified that Farnsworth & Chambers could refuse to let a truck driver drive out there if they wanted to and could tell the driver to take his truck home because there was no work, or send the driver off the job because they didn't like him or

for some other reason; that if they had told him to go back home when he got there and not come back, he would have done it; that he was going to work a little early on the day of the accident at the request of an employee of appellant; that if appellant's truck foreman had told him to do an errand on the job instead of hauling dirt he would have done it; that appellant had no service facilities on the job and provided no public transportation to get to the job, and that it was necessary for him, Trahan, to use the truck to get to the job, and for transportation; and that appellant had made it clear that when they told him to be there at 7 o'clock they wanted him there at 7 o'clock or whatever time they mentioned.

Trahan further testified that he was on his way to work when the accident happened; that he had no driver's license; that no one asked him if he had a driver's license; and that when the accident happened it was good daylight and the sun was up; that when Farmer's Studebaker broke down, Farmer took the truck off the job, and was the one that got in touch with him and told him to pick up the Ford truck and get back to hauling dirt; that during the entire time he was hauling dirt he had no conversation or agreement of any kind with any of appellant's employees as to how he was to operate his truck or as to what he was to do with the truck after he left the job in the afternoon, except they told him to have it serviced up and ready for a day's work the next day; that appellant did not tell him where to take the truck when he got off the job, and as far as he knew appellant did not know where he kept the Ford truck at night or where he had it serviced.

He also testified that there were occasions when he would report to the job site at 7 o'clock in the morning and find out they weren't going to haul that day, so he would go back home and would not be paid, and sometimes he would start hauling at 7 o'clock and maybe haul just three or four hours on account of rain or because the loader broke down, and at such times pay would stop; that sometimes his father would pick him up at Chambers County Motors and take him home but when his father was not able to come and pick him up he would drive the truck home after servicing it at Chambers County Motors, and that he believed the night before the accident was the only night that he had driven the Ford truck to his home; that the only agreement he had about working for anybody was the agreement he had with Farmer, and that Mr. Farmer told him to go out to the job with the truck gassed, oiled and properly serviced; that he would report to Mr. Farmer how many hours he had put in on a day's work; that the evening before the accident he serviced the truck at Chambers County Motors and drove it from there to his home; that the pay for the truck would not start until he got out there on the job and that for each load he made he was given a slip which he would turn over to Mr. Farmer.

Appellees' witness, Ezra Dunn, a former employee of appellant, testified he was a truck foreman for appellant under Moon; that when a truck came out to work the first day he inspected it to see if it was in good shape and to ascertain that the driver had his commercial license, but he did not ask the drivers such as Trahan, who had been on the job when Moore was the truck foreman, whether they had a license; that he had a right to fire the drivers and that if they would not pay any attention to his instructions he would let them go, that is, take them off the job; that he could order the trucks and drivers to carry things from one part of appellant's job to another part of it and that the drivers were paid by the hour and got paid if they were hauling dirt; and that the only agreement that he had and that the truck owner had was that the truck owner was to furnish a truck and driver at $3 an hour while the truck was actually hauling dirt.

He also testified that the owner of the truck and the truck driver could quit at

any time he wanted to and take his truck off the job at any time of the day he wanted to but was supposed to notify appellant and appellant couldn't do anything about it except stop his pay; that on the days the truck driver didn't work hauling dirt for appellant he could do anything he wanted to; that he could haul for somebody else and appellant could not do anything about it; that he didn't know when a truck left the job at the end of the day where it was going, and didn't tell the driver where to service the truck and didn't know where the trucks were serviced, and didn't know whether the driver kept his truck at home or whether he took it to the owner's place of business or the owner's house, or what he did with it; that it didn't make any difference to him where the driver serviced his truck or kept his truck, and that all they were interested in was moving dirt; that the owner of the truck selected the man to drive his truck and if the driver of the truck showed up in the morning ready to haul dirt with the truck properly serviced and the driver in good condition it was none of his business what the driver had done the night before.

While the evidence must be construed in the light most favorable to appellees, the testimony of the witnesses must also be considered in the light of the undisputed terms of the oral agreement for hire between appellant and Farmer. If the testimony with respect to the directions given Trahan and statements concerning what might have been done under the contract can be reasonably construed as being just as consistent with the limited hourly on-the-job employment under the contract as with the general employment of Trahan by appellant, the former construction must prevail since the latter construction would permit the express oral contract of employment between appellant and Farmer to be destroyed by speculative conclusions of witnesses or the mere giving of directions well within the purview of the contract of limited employment and substituting therefor a general employment never contemplated by appellant.

We think Trahan's testimony is consistent with the special employment contract which did not provide for any control by appellant over him or the truck after the day's work was done. Appellant did direct all the details of the job of hauling dirt and had control of the driver and truck so long as it was paying $3 per hour for the use thereof. Since the truck and driver were leased or hired as a unit, it was necessary for Farmer to have the truck and a driver on the job at such time as appellant designated in order for Farmer to earn any money. If the driver reported for work and there was no work for any reason, appellant could send him and the truck on back. Trahan's testimony is clear that he was working by the hour and that the hours varied, depending upon appellant's wishes.

Under the undisputed evidence, Farmer was free to do whatever he desired with the truck when it was not actually hauling dirt on the job. The testimony of Farmer clearly shows that the hiring agreement was to continue so long as agreeable with both parties thereto, and that either party could temporarily or permanently terminate the same at any time without any liability to the other. Trahan was the general employee of Farmer, who hired him and agreed to pay him $1 per hour, that is, one-third of the amount he and the truck as a unit earned hauling dirt, less social security payments deducted by Farmer from Trahan's earnings. It was agreeable with Farmer for the truck and driver to be used day or night so long as he was paid $3 per hour, and during such time appellant had the right of control and direction over the unit. Under the hiring agreement in question there was at most only a special employment by appellant of the driver and truck. The truck was not leased independently of the driver. There is no evidence that appellant could have kept Farmer's truck and employed another driver therefor. If the driver was unsatisfactory to appellant and

discharged from appellant's job, the unit would be discontinued and Farmer's compensation therefor stopped until he provided another driver.

We think the cases relied upon by appellees are factually distinguishable from the instant case and are not in any manner controlling of the issues involved herein. Appellees first cite Davis v. Jeffords-Schoenmann Produce & Brokerage Co., Tex.Civ.App.1924, 261 S.W. 401, 404. In that case the employee was given the right by the owner of the truck to drive the truck to his meals and to his home. At the time of the collision the driver was using the car, going to his lunch in it. Such use was not only the one he was expected by the employers to make of it but they had turned it over to him during the noon hour for that purpose. The court stated:

"It thus appears that this truck of his employers was at all periods of the 24 hours of each day under the driver's control by virtue of a custom and agreement between them to that effect. Under that arrangement he kept it over night so that he could the better prosecute and further his master's business by getting down earlier in the morning, working after regular hours, and after dark whenever there was occasion for that, and in shortening the intervals his own rest and refreshment called for."

In the present case the situation is quite different. Appellant didn't own the truck and did not turn the truck over to Trahan, or authorize him to use the truck for any purpose. All that the appellant was interested in was that the truck report on the job in the morning ready to haul dirt on the construction job. It was Farmer who owned the truck, employed Trahan, serviced the truck, and directed what was done with the truck when it was not actually working on the job for appellant.

In practically all of the cases relied upon by appellees the employee was a general employee, and at the time of the accident was acting for his employer within the course of his employment. In Friend-Rowe Motor Co. v. Ricci, Tex.Civ.App.1927, 293 S.W. 851, there was evidence upon which the jury could find that the employee's use of the employer's car was known and assented to by the employer for the purpose of aiding in the management of the employer's business. In Studebaker Bros. Co. v. Kitts, Tex.Civ.App.1913, 152 S.W. 464, error ref., the court stated that the driver was acting under orders from his foreman and performing the service contracted for by his master. In Ineeda Laundry v. Newton, Tex.Civ.App.1930, 33 S.W.2d 208, writ dism., an employee of Ineeda Laundry was driving a truck belonging to the company. He had been authorized to keep the truck in his garage every night. At the time of the collision he was taking the truck to get his wife and was then going to take the truck home and put it up. He stated that he was incidentally going by to get his wife. After getting his wife he was going right on home to put the truck up as he had been authorized to do. It was his duty to store the truck for safekeeping. The court stated that at no time had he abandoned such duty. True, he was going to get his wife, but in doing so was not violating his master's orders. The master had never designated a route for him to take in driving the truck to his home, but left it entirely to him, and he was practically on his way home at the time.

In Columbian Fuel Corporation v. Summers, Tex.Civ.App., 134 S.W.2d 694, the evidence showed that one Hemsell was the district geologist, agent and employee of appellant and maintained his office with appellant in Amarillo; that the company and the duties of Mr. Hemsell required him to visit different localities in each of the states; that his employer furnished him with an automobile to make these trips and when the business he was sent to transact was completed he returned to his office in Amarillo to continue his services for his master. He had gone to Kansas to wit-

ness the completion of an oil well for his employer, and after completing his duties there he was on his way home by the most direct route when the accident occurred. Under such facts clearly he was acting at the time within the course of his employment for his employer.

Appellees also rely upon the case of Consolidated Underwriters v. Breedlove, Tex. Com.App.1924, 114 Tex. 172, 265 S.W. 128. In that case the mechanic was subject to call at all hours. After being sent to see about a battery, before returning, he stopped for lunch and was injured after lunch while on his way back to the shop. The court properly held that he was in the course of his employment.

We think it would serve no useful purpose to undertake to distinguish the other cases cited by and relied upon by appellees. None of them covers the situation existing in the instant case.

Neither appellant nor appellees have cited any case directly in point. However, appellant relies upon O'Briant v. Lone Star Const. Co., Tex.Civ.App.1937, 109 S.W.2d 1021, 1023, no writ hist., which was a suit for damages arising out of a collision between plaintiff's automobile and a truck being driven by one Gollehon. Howell, the owner of the truck, had a trucking contract with the defendant, Lone Star Const. Co., to haul stone on a road job and was paid for his services and for the use of the truck on the basis of so much per load of gravel. Under N.R.A. restrictions, Howell could drive his truck only 30 hours per week, so after he worked his 30 hours the truck was left on the job to be driven by Gollehon, a driver selected by Howell. While on the job, Howell spent his nights in Post and in the morning would drive to the job in his truck, and at the end of each day return to Post in his truck. The accident occurred on a public highway as Gollehon was driving the truck back to Post after the day's hauling had been completed. The Court of Civil Appeals upheld an instructed verdict for the defendant, saying:

"But whatever appellee's relation was to the truck it acquired no right of control, if it had a right of control, until the truck was delivered on the job. It was under no obligation or did it have the right to go to Post, or to any other place, and take possession of the truck. If Gollehon was appellee's agent, it was a special agency to drive a truck owned by an independent contractor and put on the job by the owner in his capacity as an independent contractor. It follows beyond question that it was the duty of the independent contractor, Howell's duty, to deliver his truck on the job and, when the day's work was done, to take the truck off of the job. The compensation for the use of the truck, not the driver's services, necessarily included the cost of putting the truck on the job and of taking it off of the job. Had Gollehon called for the truck at Post and driven it to the job, he would have been Howell's agent, and not appellee's agent, up to the time he began work. Had Gollehon wrecked the truck on his way from the job back to Post, certainly Howell could not have held appellee responsible. So, as appellant was injured while Gollehon was in the employment of Howell, appellee was not responsible for his conduct."

We think the facts in the O'Briant case are similar in many particulars to those in the instant case and that the law applicable thereto is applicable to the present case. Appellant in the instant case had no right of control until the truck was delivered on the job. It had no right to go to Trahan's home or Farmer's home and pick up the truck or take possession of it. If Trahan was appellant's agent, it was a special agency to drive a truck owned and put on the job by Farmer. It was Farmer's responsibility to deliver his truck with a driv-

er on the job, and to take the truck and driver off the job when the day's work was done.

Appellant also cites the case of United States Fidelity & Guaranty Company v. Flanagan, 134 Tex. 374, 136 S.W.2d 210, 211, a compensation case somewhat in point. In that case the claimant, a drug store delivery boy who furnished his own bicycle in his work, was hit by an automobile while he was riding his bicycle on the public streets on his way home from work. He sometimes delivered parcels on his way home but had none to deliver on this particular night. It was also in evidence that he could not have procured or retained his job without furnishing a bicycle and that his employer furnished no facilities at the drug store for the storage of his bicycle. In answering the argument relating to the failure of the drug company to provide and maintain a storage place for the bicycle (a similar argument being made by appellees in the present case with respect to appellant's failure to have a place to store and service the rented trucks), the Supreme Court said:

"Another fact pointed out, but which we regard as of no significance, is that the drug company did not provide and maintain a place at its store for the storage of Flanagan's bicycle. There is nothing in this record that would suggest that the reason Flanagan was riding his bicycle was that he was compelled to do so because he had no other place to leave it than at his home. He made no request for permission to leave it at the drug store and even if he had done so, we are unable to perceive how that would affect the question of whether his injuries grew out of his employment."

In the instant case at the time of the collision Trahan was not performing any act on behalf of appellant or doing anything in furtherance of appellant's business. Under the instructions of his general em-ployer, Farmer, he was taking himself and the truck as a unit to the job site, there to begin work for appellant at $3.00 per hour. See Norvell Service Company v. Spell et al., Tex.Civ.App., 288 S.W.2d 133, writ ref., n. r. e.; International & G. N. R. Co. v. Anderson, 82 Tex. 516, 17 S.W. 1039, and cases cited.

■ The test of liability is whether Trahan was at the time of the collision engaged as a special employee in the work of appellant, and not whether Trahan at such time merely purposed to resume it. See Thompson v. Twin City Lumber & Shingle Co., Tex.Civ.App., 220 S.W.2d 539, writ ref.; Southwest Dairy Products Co. v. De Frates, 132 Tex. 556, 125 S.W.2d 282, 122 A.L.R. 854; Placencia v. Western Union Telegraph Co., 141 Tex. 247, 172 S.W.2d 86; American General Insurance Co. v. Coleman, 1957, 157 Tex. 377, 303 S.W.2d 370; Texas Employers' Ins. Ass'n v. Inge, 146 Tex. 347, 208 S.W.2d 867. Under the foregoing authorities, Trahan at the time of the collision, was not, as a matter of law, an employee in the course of any employment with appellant.

■ We have also concluded that appellant is not liable under Sec. 36 or Sec. 37 of Art. 6687b, V.A.T.C.S., or under the law as enunciated in Mundy v. Pirie-Slaughter Motor Co., 146 Tex. 314, 206 S.W.2d 587, and Spratling et al. v. Butler et al., 150 Tex. 369, 240 S.W.2d 1016. True, the owner of a motor vehicle may be negligent in lending the same to an incompetent or unlicensed driver, without using ordinary care to ascertain whether such person has a driver's license or is competent. If a person, however is neither the owner of the vehicle nor has such legal control thereover as would give him the legal right to turn it over to another or to deprive another of its use, he is not permitting or authorizing its use by such other person because it is not his to entrust. See Rush v. Smitherman, Tex.Civ.App., 294 S.W.2d 873, writ ref.

The undisputed evidence shows that the truck belonged to Farmer and not to appellant; that Trahan was selected and employed as the driver of the truck by Farmer and not by appellant; that the truck was entrusted to Trahan by Farmer and not by appellant; and that at the time of the collision Trahan was driving the truck by force of the authority and permission he had from Farmer, and not of the appellant. The evidence also shows that during the three weeks that Trahan was employed as a driver by Farmer, his work was very irregular. For the week ending March 21, 1956 Farmer's Studebaker truck, driven by Trahan, hauled only two days for a total of 12¼ hours; for the week ending March 28, 1956 three days for a total of 25¾ hours; for the week ending April 4, 1956 one day for a total of 11½ hours; for the week ending April 11, 1956 four days for a total of 30¾ hours. Farmer's Dodge truck hauled only two days for a total of 8½ hours. For the week ending April 18, 1956 the Ford truck, being the one involved in the accident, worked only two days, totaling 20 hours.

Moreover, when the work was finished the day before the collision, the special employment was at least temporarily terminated until the truck and driver reported on the job the next day. Farmer could have then used his driver and truck for any purpose he wanted. He could have changed drivers and sent a new driver with the truck to appellant's job the next morning, or used the truck and driver the next day on a different job without any liability to appellant. If it can be said that appellant employed Trahan, it was at most a special employment, limited to the hourly on-the-job work of hauling dirt. Certainly, after the truck reported to Chambers County Motors for the purpose of having it serviced, it was Farmer and not appellant who entrusted the truck to Trahan to take it home and drive it to appellant's job the next day. Even if appellant had known that Trahan did not have a driver's license, and had instructed him not to drive the truck to Farmer's place of business after the last load was dumped, it had no control over him and no power or legal right to enforce such instruction; nor did it have any right to keep Trahan from driving the truck to the job site the next morning or to deprive him of the use of the truck, although it could, of course, have refused to use the unit after it reported.

We have concluded that to hold appellant liable under the facts of this case would be to extend the application of Art. 6687b too far and beyond the legislative intent. It is our opinion that the Trial Court erred in overruling appellant's motion for an instructed verdict and its motion for judgment non obstante veredicto, and that the judgment must be reversed and rendered.

In view of our holding, it is not necessary to discuss appellant's other Points of Error.

Reversed and rendered.